1

2

3

4

5

6                                                            O

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MARY YAZO, an individual on  )   Case No. CV 08-03512 DDP (AGRx)
     behalf of herself and all    )
12   others similarly situated,   )   **ORDER GRANTING MOTION TO DISMISS**
                                   )
13                    Plaintiff,  )   [Motion to Dismiss filed on
                                   )   September 3, 2008; Request for
14        v.                      )   Evidentiary Hearing filed October
                                   )   21, 2008]
15   LAW ENFORCEMENT SYSTEMS,      )
     INC., a New York             )
16   corporation,                 )
                                   )
17                    Defendants.  )
     _____ )

18

19        This matter comes before the Court on Defendant Law

20   Enforcement Systems, Inc.'s motion to dismiss Plaintiff Mary Yazo's

21   Complaint. Law Enforcement Systems ("LES") moves to dismiss Yazo's

22   Fair Debt Collection Practices Act and state unlawful business

23   practices claims.  After reviewing the materials submitted by the

24   parties and hearing oral argument, the Court grants the motion to

25   dismiss with leave to amend.

26   **I.    BACKGROUND**

27        Plaintiff Mary Yazo ("Yazo") filed this action behalf of

28   herself and all others similarly situated on May 29, 2008. The

     Complaint alleges that Yazo, a resident of Riverside, California,

1  incurred debt on the 91 Express Lanes for failure to pay toll road
2  fees. Compl. ¶¶ 6, 11. The 91 Express Lanes, operated by Orange
3  County Transit Authority, are a four-lane ten-mile road in the
4  median of California's Riverside Freeway (State Route 91). Id. ¶
5  11. Yazo's debt was originally the property of the 91 Express
6  Lanes, but was transferred to LES for collection. Id. ¶ 12.
7      Yazo received a letter demanding payment for the outstanding
8  debt. Id. ¶ 13. Yazo alleges that the letter was deficient in that
9  it (1) failed to afford Yazo the requisite validation of debt, id.
10 ¶ 15, and (2) failed to inform Yazo that LES was attempting to
11 collect a debt and that information would be used for that purpose,
12 id. ¶ 16. Additionally, Yazo alleges that, in a response to a
13 letter from counsel, 91 Express Lanes provided no information
14 regarding the amount of the debt owed and instead instructed
15 Plaintiff's counsel to contact LES. Id. ¶ 18. Yazo alleges that, by
16 including in its correspondence its full name, "Law Enforcement
17 Systems, Inc.," LES "falsely and deceptively invoke[d] affiliation
18 with federal or state law enforcement agencies." Id. ¶ 23. The use
19 of the name, Yazo alleges, "implicitly threatens arrest or criminal
20 prosecution for failure to pay the debt." Id.
21     Yazo alleges that the letter, and LES's subsequent contact
22 with Yazo, violated the Fair Debt Collection Practices Act
23 ("FDCPA"), 15 U.S.C. § 1692, et seq. Compl. ¶¶ 21-27. Yazo also
24 claims that LES committed unlawful business practices in violation
25 of California Business and Professions Code § 17200 et seq.
26     LES brings this motion to dismiss pursuant to Federal Rule of
27 Civil Procedure 12(b)(6), failure to state a claim.  In its Motion
28 to Dismiss, LES argues that the FDCPA does not apply to fines

1  imposed by state law or those imposed as a result of automotive

2  infractions, but rather only to consensual consumer transactions.

3  Because LES was attempting to collect a fine imposed by the

4  California Vehicle Code, the FDCPA does not apply to LES's attempts

5  to collect those fines. Additionally, LES argues, there could be no

6  consensual transaction in this case.

7  **II.   DISCUSSION**

8       A.   <u>Legal Standard</u>

9       Federal Rule of Civil Procedure Rule 12(b)(6) allows a

10 plaintiff's complaint to be dismissed for "failure to state a claim

11 upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Under

12 Rule 12(b)(6), a complaint may be dismissed for failure to state a

13 claim if, after accepting the complaint's material allegations and

14 facts, it appears beyond doubt that the plaintiff can prove no set

15 of facts in support of the claim which would entitle the plaintiff

16 to relief. <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449, 455 (9th Cir. 1994).

17      B.   <u>"Debt" Under the FDCPA</u>

18      Yazo's complaint alleges violations of 15 U.S.C. §§ 1692e-

19 1692g. Compl. ¶¶ 23-26. Each of these sections depends on the

20 meaning of the term "debt." Here, the central issue whether the

21 obligation LES seeks to collect is a "debt" for the purposes of the

22 FDCPA.

23      Not all obligations to pay are considered "debts" under the

24 FDCPA. <u>Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.</u>, 111

25 F.3d 1322, 1324 (7th Cir. 1997); <u>see</u> <u>Charles v. Lundgren & Assocs.,</u>

26 <u>P.C.</u>, 119 F.3d 739, 740-42 (9th Cir. 1997) (adopting the reasoning

27 and approach of the Seventh Circuit in <u>Bass</u>). The FDCPA defines

28 "debt" as:

3

1  any obligation or alleged obligation of a consumer to pay

2  money arising out of a transaction in which the money,

3  property, insurance, or services which are the subject of the

4  transaction are primarily for personal, family, or household

5  purposes, whether or not such obligation has been reduced to

6  judgment.

7  15 U.S.C. § 1692a(5). The parties' dispute in this motion focuses

8  solely on whether the unpaid funds at issue arise out of a

9  "transaction" within the definition of "debt." § 1692a(5).

10  Congress did not define the term "transaction" in the context

11  of the FDCPA, but courts have read the term broadly such that it is

12  not limited to, for example, an extension of credit. See Bass, 111

13  F.3d at 1325-26. Rather, the touchstone seems to be that "debt" is

14  incurred when a consumer engages in a "consensual transaction":

15  "the FDCPA limits its reach to those obligations to pay arising

16  from consensual transactions, where parties negotiate or contract

17  for consumer-related goods or services." Id. at 1326; see also

18  Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir.

19  1998)("[A]t a minimum, a 'transaction' under the FDCPA must involve

20  some kind of business dealing or other consensual obligation.");

21  Betts v. Equifax Credit Info. Servs., 245 F. Supp. 2d 1130, 1133

22  (W.D. Wash. 2003); Hansen, 280 F. Supp. 2d 1196, 1202 (W.D. Wash.

23  2003).

24  In the same vein, where the transaction is not a consensual

25  one, the resulting obligation is not "debt" within the meaning of

26  the FDCPA. The theft of goods or services, for example, does not

27  qualify as a consensual transaction. Bass, 111 F.3d at 1326.

28  "Although a thief undoubtedly has an obligation to pay for the

4

1   goods and services he steals," it is an obligation outside of the

2   scope of the FDCPA. Id. Similarly, an obligation arising from the

3   violation of a law or the commission of a tort is not the result of

4   a consensual transaction. In Betts, for example, the plaintiff's

5   car had been towed and impounded when it was illegally parked, and

6   the plaintiff owed the fee for that impoundment. 245 F. Supp. 2d at

7   1133. The court rejected the plaintiff's contention that the fee

8   for the impoundment was a "debt" within the meaning of the FDCPA

9   because the event giving rise to the obligation to pay -- the

10  impoundment -- was not a consensual consumer transaction, but

11  rather a consequence imposed by a Washington state statute. Id.;

12  see also Shorts v. Palmer, 155 F.R.D. 172 (S.D. Ohio 1994);

13  Hawthorne, 140 F.3d at 1367 (damage awards resulting from tort

14  liability are not "debts" under the FDCPA); Corridean v. Restore

15  Fin. Servs., 2007 WL 1114221 (D. Or. 2007).

16      In this case, the parties agree that Yazo's obligation

17  constitutes two parts: the toll charges themselves and the fines

18  imposed for her failure to pay a toll. See Opp. at 5; Reply at 3.

19  The latter obligation - the fines - were incurred as a penalty

20  authorized by California Vehicle Code § 40250. Because these are

21  fines imposed as a result of a statutory violation, they were not

22  incurred through a consensual transaction and fall outside the

23  scope of the FDCPA's definition of "debt." See Betts, 245 F. Supp.

24  2d at 1133.

25      The parties disagree, however, on the nature of the toll

26  charges. Yazo argues that the toll charges are distinct from the

27  fines, and were the result of a consensual transaction. LES

28  contends that the toll charges are also outside the scope of the

1   FDCPA. First, LES argues that the "collection" of the underlying

2   toll charge is imposed by statute, not by contract. LES points to

3   California Vehicle Code § 23301, which provides that "[e]very

4   vehicle which enters into or upon any vehicular crossing

5   immediately becomes liable for such tolls and other charges as may

6   from time to time be prescribed by the California Transportation

7   Commission." Second, LES argues that, in light of the sections of

8   the California Vehicle Code providing when a toll is due, failing

9   to pay a toll constitutes stealing.

10      As a general matter, a toll charge, the charge for the use of

11   the toll road, is a charge for services. A driver incurs the toll

12   charge upon making his choice to utilize the toll road. But a

13   consensual transaction does not exist in all instances where a

14   driver uses a toll road. Rather, when a driver fails to pay the

15   toll charge, the use of the toll road is akin to theft.

16      California law makes clear that toll road use is only

17   consensual in certain situations. First, pursuant to California

18   Vehicle Code § 23302(b), certain toll roads – those without toll

19   booths– are open only to those customers who "already have a

20   transponder or other toll payment device associated with a valid

21   Automatic Vehicle Identification account." Cal. Veh. Code

22   § 23302(b). To the extent a driver does not have an account on a

23   toll road that requires one as a condition for use, yet uses the

24   toll road anyway, that use cannot be considered consensual. Second,

25   for all toll roads, California law allows only those persons who

26   can pay tolls at the instant they are liable for them to use the

27   toll roads. See Cal. Veh. Code §§ 23301, 23302(a). Thus, to the

28   extent a driver does not have intent or does not have means to pay

1  for use of the toll road, yet uses the toll road anyway, that use

2  constitutes theft, and is not a consensual transaction that gives

3  rise to "debt" under the FDCPA. Cf. Bass, 111 F.3d at 1326

4  (discussing Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d

5  Cir. 1987)); Shorts, 155 F.R.D. at 175-76.

6      The Complaint alleges that Yazo's obligation to pay toll

7  charges arose from a failure to pay toll road fees on the 91

8  Expressway. See Compl. ¶ 11. Because the 91 Express Lanes is a toll

9  road, see Compl. ¶ 11, in light of §§ 23301 & 23302, a transaction

10 in which a driver fails to pay fees on the 91 Express Lanes is not

11 consensual. As noted above, "[a]lthough a thief undoubtedly has an

12 obligation to pay for the goods and services he steals," it is an

13 obligation outside of the scope of the FDCPA. See Bass, 111 F.3d at

14 1326. Yazo has not pled facts showing a consensual contractual or

15 business dealing for the use of the toll road services. Rather,

16 taking Yazo's allegation that she failed to pay toll charges as

17 true, the Court cannot conclude that the obligation to pay arose

18 out of a consensual consumer transaction, and therefore finds that

19 it is outside the scope of "debt" as contemplated by the FDCPA. The

20 Court therefore dismisses the plaintiff's FDCPA cause of action

21 with leave to amend.

22      C.   Plaintiff's Unlawful Business Practices Claim

23      In addition to the FDCPA claim, Yazo's Complaint also alleges

24 a cause of action for unlawful business practices in violation of

25 state law, California Business and Professions Code § 17200. LES

26 argues that Yazo's unlawful business practices claim rests solely

27 on her FDCPA claim; to the extent Yazo's FDCPA claim fails, LES

28 argues, so must her § 17200 claim.

1    Under § 17200, unfair competition includes "any unlawful,

2    unfair or fraudulent business act or practice and unfair,

3    deceptive, untrue or misleading advertising," as well as false or

4    misleading statements. Cal. Bus. & Prof. Code § 17200. A plaintiff

5    alleging unlawful business practices under the unfair competition

6    statutes "'must state with reasonable particularity the facts

7    supporting the statutory elements of the violation.'" Silicon

8    Knights, Inc. v. Crystal Dynamics, Inc., 983 F. Supp. 1303, 1316

9    (N.D. Cal. 1997) (quoting Khoury v. Maly's of Cal., 14 Cal. App.

10   4th 612, 612 (1993)).

11       Yazo's unlawful business practices claim relies on the FDCPA

12   claim. Yazo alleges that "by and through the conduct described [in

13   the Complaint], Defendant LES engaged in unfair, fraudulent and

14   unlawful practices." Compl. ¶ 33; see also id. ¶ 33 ("By and

15   through the unfair, fraudulent and unlawful business practices

16   described herein, Defendant LES has failed to comply with the

17   FDCPA[.]"). Paragraph 28 of the Complaint incorporates by reference

18   ¶¶ 1-27. Id. ¶ 28. Because the Court has dismissed Yazo's FDCPA

19   claim, that claim cannot form the basis of a valid unlawful

20   business practices claim. Aquino v. Credit Control Servs., 4 F.

21   Supp. 2d 927, 930 (N.D. Cal. 1998)("The Court has already rejected

22   plaintiff's primary FDCPA claim and it cannot serve as the basis of

23   a claim under section 17200.").

24       Yazo argues that "[p]aragraphs 1 through 27 of the complaint

25   set forth, with particularity, the specific 'unlawful' conduct

26   which gives rise to the section 17200 violation." Opp. at 15. On

27   the Court's reading of those paragraphs, the allegedly unlawful

28   conduct is the conduct that allegedly violates the FDCPA. Indeed,

1   Yazo's brief emphasizes her reliance on the FDCPA claims. Opp. at

2   16:9-27. Yazo does not identify specific paragraphs or allegations

3   that support a § 17200 claim separate from the potential FDCPA

4   violation. The only portion of a paragraph the Court can identify

5   on its own is the portion of ¶ 23 that claims LES's name "falsely

6   and deceptively invokes affiliation with federal or state law

7   enforcement agencies." Yazo does not explain how this allegation

8   supports an unlawful business practices claim apart from the

9   alleged violation of § 1692e of the FDCPA.

10      Accordingly, because the state law unfair business practices

11  claim relies solely on the deficient FDCPA claim, the Court grants

12  the motion to dismiss.

13  **III. Conclusion**

14      For the foregoing reasons, the Court grants the motion to

15  dismiss with leave to amend.

16      After the hearing, LES filed a request for an evidentiary

17  hearing, or in alternative, conversion of its motion to dismiss the

18  complaint to a motion for summary judgment. In light of the Court's

19  ruling on the motion to dismiss, the Court vacates that Request as

20  moot.

21      IT IS SO ORDERED.

22

23

24  Dated: November 7, 2008

25                                 DEAN D. PREGERSON
                                   United States District Judge

26

27

28